UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-20228-CR-SEITZ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MARC PIERRE ALTERMA,

        Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court on Defendant's Motion to Dismiss Indictment for Violation of Speedy Trial [DE 18], the government's response [DE 22], and Defendant's reply [DE 23]. Defendant seeks dismissal pursuant to his Sixth Amendment right to a speedy trial and pursuant to Federal Rule of Criminal Procedure 48(b). On August 30 and 31 and September 11, 2018, the Court held an evidentiary hearing. Because the Government did not fulfill its constitutional duty to make a diligent and good faith effort to locate and apprehend Defendant, the motion is granted.

## I. Factual Background

On March 31, 2011, Defendant was indicted on four counts: (1) making a false statement in a passport application in December 2003; (2) using and attempting to use a passport secured by a false statement in February 2010; (3) impersonating a United States citizen in February 2010; and (4) aggravated identity theft in February 2010. On the same day, an arrest warrant was issued. At that time, the indictment was sealed. The indictment remained sealed for more than seven years until after Defendant was arrested on May 31, 2018. The counts in the indictment all

1

relate to Defendant's use of the means of identification of a person with the initials of "J.P.C."

The search for Defendant was led by the U.S. Department of State, Bureau of Diplomatic Security (DSS), with help from ICE and the U.S. Marshal Service. After the indictment issued, the government made the following attempts to find Defendant:

- On April 14, 2011, government agents interviewed Defendant's wife at the residence listed on the Defendant's Florida Driver License. She stated that she and Defendant were separated and that she had not seen him for a while and did not know where he lived.

- Agents conducted database checks to find Defendant's vehicle. After numerous attempts to locate the vehicle, it was spotted on April 18, 2011. No one answered the door at the nearby residence. Agent's spoke to the landlord about the Defendant and, thereafter, the landlord contacted agents about activity at the residence on numerous occasions. Later the landlord told agents that Defendant had had friends pick up his belongings from the residence. One of Defendant's friends told the landlord that police were looking for Defendant, that Defendant would not be coming back, and that Defendant had moved to California.

- At some point Defendant's wife told him about the criminal investigation.

- On May 6, 2011, law enforcement obtained a warrant to place a tracking device on Defendant's car. Nine days later, they discovered that the car was registered to a new owner. The new owner told law enforcement that he bought the car from Defendant but did not actually meet with Defendant for the transaction.

- *No action was taken from May 6, 2011 until March 2012, a period of 9-10 months.*

- In March 2012, law enforcement went to Defendant's previous residences and knocked on doors to ask people about Defendant's whereabouts.

- In June 2012, a new special agent was assigned to the case. The agent ran database checks and conducted surveillance multiple times at different addresses in August and September 2012.

- By October 2012, law enforcement reported that Defendant appeared to longer be using his true identity or his assumed identity of J.P.C. The agent continued to conduct surveillance (twice in October 2012 and once in January 2013), speak with individuals who might know Defendant (once in October 2012), and run database checks (once in October 2012 and once in March 2013).

- *No action was taken from March 2013 until June 2014, a period of 15 months.*

- In June 2014, an agent verified the outstanding arrest warrant.

- On August 27, 2014, law enforcement reviewed commercial databases and found a potential new address for Defendant that was added to Defendant's record. No follow up was taken.

- In December 2014 and January 2015, additional records checks were conducted.

- In January 2015, agents conducted surveillance at Defendant's brother's house and then at Defendant's ex-wife's house for 30 minutes. They found no evidence that the Defendant was at either location and did not make contact with Defendant's brother or ex-wife. Additional database checks were conducted.

- Once each in February, May, and June 2015, a database check was conducted.

- In August 2015, law enforcement ran records checks and conducted surveillance at three addresses associated with the Defendant.

- In October 2015, law enforcement ran records checks and conducted surveillance at Defendant's brother's house.

- In November 2015, law enforcement conducted case reviews and/or records checks.

- In March 2016, June 2016, August 2016, September 2016, and December 2016, law enforcement conducted case reviews and/or records checks.

- In March 2017, June 2017, August 2017, and September 2017, law enforcement conducted case reviews and/or records checks.

- In late 2017, law enforcement received new information about Defendant but investigation revealed that the information was not accurate.

- In February 2018 and April 2018, law enforcement conducted case reviews and/or records checks.

- On May 31, 2018, Defendant was arrested outside a restaurant in the Little Haiti neighborhood of Miami.

During this time, the officers from DSS were reassigned every two years.

At the evidentiary hearing, two of Defendant's relatives testified as did Defendant's

3

girlfriend. Their testimony established that Defendant continued to live in south Florida during this entire time. His relatives testified that they saw Defendant regularly. Defendant came to their houses on a regular basis and even lived with one of them for a while. Defendant regularly went to a recording studio to lay down beats, which he then would sell. It was also established that Defendant saw his minor daughter weekly during this entire period. According to Defendant's girlfriend, he spent every evening at her house in the Little Haiti neighborhood of Miami, helping her and her mother run a "restaurant" that the mother ran out of her house. The "restaurant" served hundreds of people a day, including police officers.

Defendant was arrested outside a restaurant in the Little Haiti neighborhood near his girlfriend's house. When he was arrested, Defendant told agents that he was aware that law enforcement was looking for him and he stated that he threw away the passport and stopped using the identity of J.P.C. when he realized that law enforcement had discovered it was not valid. Once Defendant stopped using the J.P.C. identity, he did not have a driver's license, credit cards, a bank account, or a permanent address.

## III. Analysis

### A. Defendant's Sixth Amendment Right to a Speedy Trial Has Been Violated

The Sixth Amendment guarantees the right to a speedy trial. As a result, the government "has a 'constitutional duty to make a diligent, good-faith effort' to locate and apprehend a defendant and bring the defendant to trial." *U.S. v. Bagga*, 782 F.2d 1541, 1543 (11th Cir. 1986) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)). To determine whether a post-indictment, pre-trial delay has violated a defendant's right to a speedy trial, courts consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a

speedy trial; and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The first factor consists of a double inquiry. *Doggett v. U.S.*, 505 U.S. 647, 651 (1992). A court must first determine whether the "interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Id.* at 651-52 (internal quotations omitted). Once the defendant makes this showing, the court must then consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652. The longer the delay stretches beyond this bare minimum, the stronger the presumption that it has prejudiced the defendant. *Id.* Delays exceeding one year are generally found to be presumptively prejudicial. *U.S. v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006). Once the presumption has been established, a court must consider the remaining three factors. *Id.* In the Eleventh Circuit, "a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government." *U.S. v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991); *see also U.S. v. Oliva*, 2018 WL 4443055, *3 (11th Cir. 2018). In this case, because the first three factors weigh heavily against the government, Defendant need not show shown actual prejudice. Consequently, Defendant is entitled to dismissal pursuant to his Sixth Amendment right to a speedy trial.

### *1. Length of the Delay*

The delay in this false passport case is more than seven years long.[1] As set out above, a delay of more than a year is presumptively prejudicial. Further, the government concedes that

---

[1] The parties both focused on the delay between the issuance of the indictment and Defendant's arrest. However, a pre-indictment delay can also weigh heavily against the government. *Oliva*, 2018 WL 4443055 at *4 (citing *U.S. v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006)).

5

the delay satisfies the threshold inquiry and constitutes presumptive prejudice. Consequently, this factor weighs in favor of Defendant and against the government. Thus, the Court must consider the remaining factors.

### 2. Reason for the Delay

To determine whether a defendant's "right to a speedy trial has been violated[,] the conduct of the government must be weighed against the conduct of the defendant." *Bagga*, 782 F.2d at 1543. The government "bears the burden of establishing valid reasons for the delay." *U.S. v. Villareal*, 613 F.3d 1344, 1351 (11th Cir. 2010). "[T]he government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on if the government acted in good faith or bad faith." *Id.* However, "a defendant who intentionally evades the Government's efforts to bring him to trial is culpable in causing the delay." *Ingram*, 446 F.3d at 1337. In determining whether the government has diligently pursued a defendant, a court must keep in mind that diligence does not require the government to pursue futile legal gestures. *Bagga*, 782 F.2d at 1543.

Here, the government did not diligently pursue Defendant. After the initial efforts to find Defendant in the five or six weeks after the indictment issued, law enforcement activity primarily consisted of database checks. Based on the testimony at the evidentiary hearing, after their initial efforts, law enforcement only went into the field in search of Defendant approximately a dozen times over the next seven years. Law enforcement conducted only limited surveillance of family members and for very limited periods of time, often for no more than a few hours and sometimes for as little as thirty minutes. Given that Defendant was living openly during this time, in the same Little Haiti neighborhood; seeing the same people regularly, including his minor daughter;

6

and working at the same recording studio in the Little Haiti vicinity, it appears that the government's failure to find and arrest Defendant was due to a lack of effort on the part of the government.

Furthermore, there were large time gaps between efforts to locate Defendant, including a more than nine month gap and a fifteen month gap of total inactivity. There were other large periods of time, including one gap of more than two and a half years, during which the government did nothing more than run sporadic database searches and conduct case reviews; in other words, government agents did nothing more than sit in front of a computer. During these time periods, there was no field investigation going on, there was no surveillance of Defendant's ex-wife, brother, or other relatives, there was no questioning of anyone who might know Defendant, and there were no other forms of active searches taking place. Clearly, finding Defendant was not a priority. The government offers no explanation for any of these lengthy gaps of inactivity or near inactivity in the search for Defendant.

While the government maintains that Defendant is partially to blame for the delay because he purposely evaded law enforcement, there is nothing in the record that clearly establishes that Defendant was purposely evading law enforcement. First, and most importantly, there is no evidence that Defendant knew of the indictment; at best, he knew that he was the subject of a criminal investigation. This is further supported by the fact that the indictment remained sealed until after Defendant's arrest. Consequently, there is no reasonable way by which Defendant could have learned of the indictment prior to arrest. Thus, Defendant could not have been avoiding trial on an indictment he did not know about. Second, the evidence the government relies upon - Defendant selling his car, moving residences, and stopping the use of

7

his true name and the J.P.C. identity - does not establish that Defendant was purposely evading law enforcement. While the government argues that these activities show that Defendant knew he had been charged with a crime, there are equally plausible inferences that would not support a finding of intentional evasion, such as a need for money, a need for a cheaper residence, and his lack of legal status. Thus, there is nothing to indicate that Defendant is partially to blame for the delay.

While it does not appear that the government's actions were a deliberate attempt to delay the trial, the government has not offered any reason or justification for the more than seven year delay, other than Defendant was purposely evading arrest. However, as discussed above, that reason is not supported by the evidence. Consequently, the government has failed to fulfill its constitutional obligation to make a diligent, good-faith effort to locate Defendant.

Furthermore, "once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government." *U.S. v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006). Here, there was a more than seven year delay between Defendant's December 2003 allegedly false passport application and the March 2011 indictment. Unlike the circumstances in *Oliva*, 2018 WL 4443055 at *8, where the two-year pre-indictment delay was not considered because of the complexity of the case and investigation, the passport fraud count was a simple claim requiring a simple investigation. The Government has proffered no explanation for this delay. Thus, considering this fact together with the fact that the government failed to fulfill its constitutional obligation to make a diligent, good-faith effort to locate Defendant, this factor weighs heavily against the government.

### *3. Assertion of Speedy Trial Right*

The failure of a defendant to assert his or her right to a speedy trial will make it difficult for a defendant to prove that he was denied a speedy trial. *Barker*, 407 U.S. at 532. In the instant case, there is no evidence in the record indicating that Defendant knew of the indictment prior to his arrest. As already noted, the indictment was sealed until after his arrest and nothing indicates that any government agents ever told any of the people they spoke to in their search for Defendant that there was a pending indictment. The instant motion was filed within a month of Defendant's arrest and, therefore, it is timely made. *See U.S. v. Velazquez*, 749 F3d 161, 184 ("knowledge of the indictment is the appropriate measure for the timely assertion of the speedy trial right") (citation omitted); *U.S. v. Clark*, 83 F.3d 1350, 1353 (11th Cir. 1996) (because defendant did not know of indictment until his arrest, assertion of speedy trial was timely made when made shortly after arrest); *Bagga*, 782 F.2d at 1545 (time period before defendant learned of the indictment cannot be considered in determining whether defendant timely asserted his speedy trial right).

The government argues that this factor does not weigh in favor of Defendant because Defendant knew that there was a criminal investigation against him and took purposeful steps to evade law enforcement. However, there is no evidence indicating that Defendant knew of the indictment against him. The mere fact that the indictment pre-dates Defendant learning that law enforcement was looking for him does not establish that he knew of the indictment. As noted above, the indictment was sealed and there is nothing in the record indicating that any government agent told any of the people they spoke to in their search for Defendant that there was a pending indictment. While it is clear that Defendant knew law enforcement was looking

9

for him, the government has presented no authority to establish that such knowledge is sufficient to require this Defendant to assert his speedy trial right earlier than he did. Consequently, this factor weighs in favor of Defendant.

### 4. *Prejudice to the Defendant*

If the first three factors do not weigh heavily against the government, Defendant must show actual prejudice. *See Davenport*, 935 F.2d at 1239. Prejudice must be accessed in light of the interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Here, as set out above, all the factors weigh heavily against the government. Consequently, Defendant need not show actual prejudice. Thus, Defendant has met his burden and has established that his constitutional right to a speedy trial has been violated. Accordingly, Defendant's motion is granted.

**B. Defendant is Entitled to Dismissal Under Federal Rule of Criminal Procedure 48(b)**

In additional to dismissal pursuant to the Sixth Amendment, Defendant also seeks dismissal pursuant to Federal Rule of Criminal Procedure 48(b). Under Rule 48(b)(3), a court may dismiss an indictment "if unnecessary delay occurs in . . . bringing a defendant to trial." Under the rule, a court has broad discretion in determining whether to dismiss an indictment but "dismissal is mandatory only if the defendant's constitutional rights have been violated." *U.S. v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) (quoting *U.S. v. Butler*, 792 F.2d 1528, 1533 (11th Cir. 1986)). As set out above, Defendant has established a violation of his Sixth Amendment right to a speedy trial, thus, requiring dismissal.

However, even if the Defendant had not established a violation of his Sixth Amendment

10

right, under the circumstances presented in this case, the Court would exercise its discretion and grant the motion to dismiss pursuant to Rule 48(b). This is a simple case. As discussed, the government did not diligently attempt to find Defendant after the indictment issued. It took the government over seven years to find a man who was openly living in the same neighborhood for that entire period. During that time, the Defendant regularly saw friends and family, worked at a recording studio, got divorced, and regularly helped out at his girlfriend's mother's Little Haiti "restaurant," which served hundreds of people a day. He was not hiding; he was living his life. Yet, the government's search attempts remained unfruitful for over seven years. The government offers no explanation for why it took so long, other than Defendant was living a paperless life. The government, however, did very little investigation during that time, other than sporadic computer database searches. Often there was no follow up in the field related to the results of those searches. Had the government conducted a more active investigation, it is highly likely that Defendant would have been found years earlier. Under these circumstances, the Court finds that there was an unnecessary delay in bringing Defendant to trial. Accordingly, the indictment is also dismissed pursuant to Rule 48(b).

Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss Indictment for Violation of Speedy Trial [DE 18] is GRANTED. The indictment is DISMISSED and this case is CLOSED.

DONE and ORDERED in Miami, Florida, this 2nd day of October, 2018.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record